[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the judicial district of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff and the defendant, whose maiden name is Karen A. Platz, were married on September 11, 1982, at Glen Cove, New York. The plaintiff has resided continuously in the State of Connecticut for at least twelve months immediately prior to the date of the filing of the complaint. There are three minor children issue of CT Page 7649 the marriage: Katrina M. Campbell, born February 17, 1986; David L. Campbell, born November 1, 1988; and Michael A. Campbell, born September 14, 1990. No other minor children have been born to the defendant wife since the date of marriage of the parties. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. The State of Connecticut has contributed to the support of the defendant and the minor children.
The parties have been separated since March of 1995. Within twelve to fourteen hours after the defendant told the plaintiff that she wanted a separation, he had a nervous breakdown. This was followed by two separate seven-day hospital admissions with an approximate three to four day interval between the first and second admission. He was subsequently admitted a third time in April of 1996, for two separate admissions of seven days each. He is currently under treatment with a psychiatrist and a therapist. His emotional health at the present time is stable.
When the parties separated, there was $197 in a joint bank account which the defendant took. The plaintiff was born on March 13, 1960. The plaintiff has a high school degree. The $197 that the defendant took at the time of separation was used by her for living expenses.
The plaintiff is presently employed as a warehouse operator at Pitney Bowes. His gross weekly income is $580. His net weekly income is $433, as shown on the child support guideline worksheet submitted on his behalf. The cost of his therapy treatment is approximately $15 weekly to him. He started working at Pitney Bowes on March 28, 1979. He has a pension plan at Pitney Bowes in which benefits will not commence until he reaches age sixty-five. His financial affidavit shows a deduction of $54 weekly for credit union. That is a deduction that is put into his savings account. He has a balance in his credit union savings account of approximately $250. When the parties separated in March of 1995, there was a credit union loan on the defendant's vehicle. He continued making weekly payments on that loan of $50 until the loan was paid off in January or February of 1996. He has been living with his parents since April of 1995. The plaintiff owns a 1989 Plymouth with a value of $3000. He owned a prior motor vehicle which was involved in an accident for which he received $1200 in insurance. He used that $1200 to purchase the vehicle he now owns for $3200. The additional $2000 came from his parents. Although not shown on his financial affidavit, he presently owes CT Page 7650 his parents approximately $4000. Although not shown on his financial affidavit, the plaintiff presently has approximately $1000 in cash where he lives. It costs him an average of $20 weekly for motor vehicle repairs. He has paid approximately $2000 towards his legal fees in this dissolution action and still has a balance owed. Of the $2000 paid towards his attorney's fees, the plaintiff paid approximately $900 from his own money with the balance coming from his parents. The benefits that he receives from his employment consists of the following: (a) vacation, twenty days per year; (b) sick leave, six days per year; (c) holidays, twelve days per year; (d) one personal day per year; (e) $50,000 life insurance; and (f) health and dental insurance. The plaintiff is presently 100 percent vested in his retirement plan, having commenced employment with Pitney Bowes on March 28, 1979. His accrued benefit, payable at age sixty-five on April 1, 2025, his normal retirement date, is approximately $436.76 per month as a life annuity, or $401.82 per month as a 50 percent joint and survivor' annuity. The employer pays the entire cost of the plan. The plan does not allow distribution of vested benefits prior to attaining age fifty-five and does not contain a loan feature or a lump sum optional distribution feature.
The defendant was born on August 20, 1962. The defendant has a high school degree. The defendant does not have any health problems, except for migraine headaches and muscle soreness. When the parties separated, the defendant had been working at the Danbury Hospital. She took a leave of absence from May until October, 1995, and then terminated her employment at the end of January, 1996. When the defendant returned to work at the Danbury Hospital in October of 1995, she was able to work only on an as-needed basis and was not able to obtain her prior job there working evenings. She was not able to obtain enough hours working at the Danbury Hospital when she returned in October, 1995, in order to support herself. The reason for the leave of absence was that she did not have any day care available for the children. Her employment at the Danbury Hospital had been an evening employment with the plaintiff watching the children during the time she worked up until the time the parties separated in March of 1995. The defendant was discharged in bankruptcy in March of 1996.
The defendant is presently employed by Corporate Staffing Solutions doing data entry work. She averages twenty-five hours weekly since July of 1996. Her twelve-week gross weekly income is $184. Her twelve-week net weekly income is $136.71. The CT Page 7651 defendant's dissolution attorney has taken this case as a pro bono matter. The defendant's employment does not provide for any vacation, holidays or sick leave until she has worked a total of 700 hours. The defendant had gross wages from the Danbury Hospital in 1993 of $15,646.01, and gross wages from the Danbury Hospital in 1994 of $16,506.68. The defendant's gross income in 1995 was $7611. The defendant now works an average of twenty-five hours weekly at $8 per hour. Her financial affidavit is based on her prior twelve-week average.
The parties are in dispute regarding a number of items of personal property. The first item involves a ten-speed bike. The plaintiff presently owns and has the use of a mountain bike. He also seeks to have returned two pellet pistols, his hunting knife and clips for his .22 rifle. The defendant agrees that the plaintiff can have his pellet gun, hand guns, knives, as well as the bow and arrow set.
The defendant commenced receiving state assistance in May of 1995. She has received it continually since that time. She has been on Title 19 for medical purposes since May of 1995. Although notified of the trial date, the State failed to appear at the trial. The defendant presently receives AFDC of $161 per month and food stamps of $256 per month. The defendant has approximately eighteen months of state assistance benefits that are remaining.
This court has considered the provisions of § 46b-82
regarding the issue of alimony, and has considered the provisions of § 46b-81 (c) regarding the issue of property division, and has considered the provisions of § 46b-56 and § 46b-56a regarding the issues of custody, joint custody and visitation, and has considered the provisions of § 46b-84 and the child support guidelines regarding the issue of support, and has considered the provisions of § 46b-62 regarding the issue of attorney's fees. The court enters the following orders.
A. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved and each part, v is declared to be single and unmarried.
B. BY WAY OF CUSTODY, VISITATION, MEDICAL INSURANCE, LIFE INSURANCE, PERSONAL PROPERTY, DEPENDENCY DEDUCTION AND SUPPORT CT Page 7652
1. The parties entered into a stipulation dated October 8, 1996, covering the issues of medical insurance for the children, medical insurance for the spouse, life insurance, personal property, dependency deduction, custody and child support. The court finds that stipulation to be fair and equitable and approves of it and incorporates it by reference into the judgment file. The stipulation of October 8, 1996, in paragraph six, also incorporated the provisions of a stipulation between the parties dated September 17, 1996. In approving of the stipulation of October 8, 1996, the court is also approving of the stipulation of September 17, 1996, and incorporating it by reference in its entirety in the judgment file.
2. The stipulation of October 8, 1996, left to be decided by the court certain items of personal property. The court awards the ten-speed bike to the defendant. The court awards the following items to the plaintiff: two pellet pistols; his hunting knife; clips for his .22 rifle; and his bow and arrow set.
3. The court finds that the child support, as called for in paragraph seven of the stipulation dated October 8, 1996, is substantially in accordance with the support guidelines.
C. BY WAY OF ALIMONY
1. The plaintiff is ordered to pay to the defendant alimony in the sum of $40 per week.
2. Alimony is to terminate on the earliest event: (a) the death of the plaintiff; (b) the death of the defendant; (c) the remarriage of the defendant; or (d) the minor child David reaching the age of eighteen.
The need for the defendant to have alimony when such age is reached will not be as great as it presently is.
3. The provisions of § 46b-86 (a) and § 46b-86 (b) are applicable.
D. BY WAY OF PROPERTY ORDERS
1. The 1990 Plymouth Acclaim is awarded to the plaintiff.
2. The 1987 Dodge Colt is awarded to the defendant. In the event that that vehicle is not solely in the name of the CT Page 7653 defendant, the plaintiff is to sign whatever documents are necessary to transfer title into her name.
3. All tools, firearms and personal property in the possession of the plaintiff is awarded to the plaintiff.
4. All personal property, household furnishings and personal effects in the possession of the defendant is awarded to the defendant, except for those items awarded to the plaintiff in paragraph B2 of these orders.
5. The plaintiff's credit union account with a balance of approximately $250 together with the $1000 he has in cash at home is awarded to the plaintiff.
6. The defendant's bank account at the New Milford Bank and at the Union Savings Bank totalling $799.70 is awarded to the defendant.
7. The plaintiff has a cash surrender value of $3822 in his life insurance policy with Franklin Life in the face amount of $10,000. He is ordered to pay to the defendant $2000 for her interest in that policy by December 1, 1996.
8. The plaintiff is to pay the sum of $10 per week to the State of Connecticut on the support arrearage. He is to hold the defendant harmless on that arrearage.
9. The defined pension plan that the plaintiff has with Pitney Bowes is ordered divided equally between the parties by QDRO. The plaintiff is to prepare the QDRO. The court retains jurisdiction over any dispute that may arise involving the language of the QDRO.
E. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either party.
F. MISCELLANEOUS ORDERS
1. The parties are to exchange copies of their federal and state income tax returns within thirty days after such returns have been filed, by certified mail, return receipt or registered mail, return receipt, for so long as there is an outstanding alimony and/or support order. CT Page 7654
2. Counsel for the plaintiff is to prepare the judgment file within thirty days and send it to counsel for the defendant for signature and filing.
3. The defendant is restored her maiden name of Karen A. Platz.
Axelrod, J.